HENTZ *v.* HENTZ.

1. DIVORCE—CUSTODY OF CHILDREN—MODIFICATION OF DECREE—JURISDICTION—EXTRATERRITORIAL ENFORCEMENT.

A circuit court in Michigan which had unquestioned jurisdiction of the parties and subject matter in a suit for divorce has jurisdiction thereafter to modify the decree as to custody of children irrespective of the fact that both parties to the suit and the children have become bona fide residents of other States, inability of a court to enforce its decrees extraterritorially not resulting in or requiring conclusion of lack of jurisdiction (CL 1948, § 552.17).

2. COURTS—OPINIONS—DICTA.

A statement in an opinion of the Supreme Court relating to the jurisdiction of the court of another State the validity of whose order is not before the Supreme Court is unsupported dicta.

3. DIVORCE—CUSTODY OF CHILDREN.

The overriding consideration in determining custody of children involved in a suit for divorce is the best interests of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 17A Am Jur, Divorce and Separation § 847.
  Nonresidence as affecting one's right to custody of child.  15 ALR2d 432.
[2] 14 Am Jur, Courts § 83.
[3] 17A Am Jur, Divorce and Separation § 818.
[4] 17A Am Jur, Divorce and Separation § 838.

children and all other considerations, including a parent's natural right to custody, must yield thereto.

4. SAME—CUSTODY OF CHILDREN—MODIFICATION OF DECREE—BURDEN OF PROOF—EVIDENCE.

Remarried mother, now residing in Texas, who sought and obtained from the circuit court a modification of its previous divorce decree awarding custody of their children to the father, *held*, under record presented containing conflicting and largely self-serving testimony of the divorced parties, not to have sustained her burden of proof to show such change in circumstances as would justify a change of custody on the basis of the welfare and best interest of the children.

Appeal from Mecosta; Van Domelen (Harold), J. Submitted February 27, 1963. (Calendar No. 96, Docket No. 49,475.) Decided October 10, 1963.

Bill by Richard J. Hentz against Corinne S. Hentz for divorce on grounds of extreme and repeated cruelty terminated in divorce. Subsequent petition by defendant for custody of minor children. Decree modified to give defendant custody of 3 of 4 children. Plaintiff appeals. Reversed.

*Robert L. Miles,* for plaintiff.

*Worcester, Worcester & Schinderle* (*George A. Worcester,* of counsel), for defendant.

O'HARA, J. This is review of a modification of a Michigan decree of divorce on petition by the mother now domiciled in Texas, which granted custody of the children originally to the father now domiciled in Illinois. He resists the petition for modification.

The initial opinion of the trial court on appellee's petition of March, 1961, praying custody of the children begins:

"The court has thought about this matter ever since the start of the hearing  *  *  *  this is 1 of

the most difficult problems that the court faces, to determine the custody of children."

On rehearing granted and testimony taken, the court adds:

"I don't know whether there is any decision in such a matter as this that has been labeled as just by both sides except that one made by Solomon * * * this court doesn't presume to have that much wisdom. However, we do our best."

To all of which we add a fervent "Amen." Add to the frustrating feeling of inadequacy of the honest speaking chancellor, who at least saw and heard the witnesses and had some basis, however slight, to assess their credibility and subjective honesty, and the plight of this Court on review becomes, we hope, understandable. The welfare of 4 innocent children we have never seen, who are cold and meaningless names in a decree of divorce are the subjects of our august deliberations.

To their disposition custodially we must apply statutes and precedent case law as if the children were certificates of deposit or pieces of furniture to be allotted piecemeal to the parties of a broken home. The instruments which we must use are motions to dismiss for want of jurisdiction, exercise of judicial discretion, and changes in circumstance of the parties, to say nothing of changes in human emotions and attitudes as subjectively expressed. In any event, as the chancellor observed "we do our best," prayerfully hoping that time will do for them what no court can, bring them a peaceful life of their own.

The facts: Richard Hentz and Corinne Hentz were husband and wife. They lived in Big Rapids, Mecosta county. Of their marriage were born 4 children aged 12, 10, 7, and 4 at the time of their parents' divorce in 1959. Their mother, defendant in the divorce proceedings and appellee here, became en-

amored of another man. Under what appears to have been an uncontested finding of fact in the decree, Corinne was found to be "not a proper person to have the care, custody, control, and education of said minor children." Richard was found, by the decree, to be a fit and proper person for the entrustment thereof. Mrs. Hentz, whose differences with her husband were apparently beyond reconciliation, despite attempts thereat through marriage counselors, by psychiatric assistance and the like—left after the divorce with the object of her affection and established herself with him in Texas. He is a professor—or instructor—at Texas A & M.

Mr. Hentz, unable to exercise practically those legally decreed rights and privileges over the children, placed them with their paternal grandparents in DeKalb, Illinois. There is no suggestion that the environment there and the care they there received is not of the highest order. The appendices, both fragmentary and, understandably, perhaps slanted, tell a sorry tale of a woman who made a mistake; who under emotional strain and claimed intolerable living conditions with her husband, agreed to his having the custody of their children; of her progress back to a new and useful life, in a home adequate, even admirably suited to bringing up children; a devoted second husband adequately circumstanced, and willing and anxious to share with her, custody and care if it be so decreed. Appellee, from what we can read in the record, answered gruelling questions forthrightly and with apparent honesty. She plants her case on the theory of the need of the children of the mother's natural affection, her changed circumstance, her husband's remarriage to a member of a college faculty who she says is and will be more concerned with her teaching career than her second husband's children. She contends if the youngsters are to be removed from the grandparental home

and placed in a new environment, they should be placed with her—that the experience will be less traumatic.

*Per contra,* the father urges that it is not her change in circumstance that controls, but his. That the decree should not be disturbed unless it is conclusively established that he is no longer the fit and proper custodian he was decreed to be. He urges lack of jurisdiction in the Michigan court by reason of the bona fide domicile of the children and himself in Illinois; he denies that his appearance by attorney gives the court jurisdiction of the "subject matter," the children, and he appeals to public policy and good conscience in seeking our reversal of the modified decree which awarded custody of the oldest child to the father, the 3 younger to the mother, in face of the previously found unfitness.

There is of course more to the record. Zealous counsel, striving mightily, adduced much testimony on the equities, past, present, and future. As the court below remarked in his opinion: "The court has allowed quite a leeway in the testimony today in order to give everyone a chance to be heard." What was heard was sometimes helpful in determining equities, sometimes not. Some bore on the overriding question of the rights and well-being of the children, some did not. Some was a painful rehash of the grounds of divorce; some was purely religio-philosophical speculation on the relative right of a wrongdoer and innocent subject of the wrongdoing. Impugned were the sincerity of the "reform" with ugly recountings of the mother's alleged referral to her children by vile epithets. Attempted but curtailed by the court was an attempted detailing of the combat war record of the father, and countering in disgusting finale was the alleged incident of the father in the presence of the children, referring to their mother and her second husband in unprintably

vicious and vulgar language. At the wearying end of the record it is to be wondered if, as the novel's title suggests, the court should not "leave them to Heaven." But as the court below observed: "We do our best."

Before we may concern ourselves even with the basic guiding principle in this case, the rights and well-being of the children, and its tangential issue, the conflicting claims and equities of the divorced parties as they affect the children, we must first consider the problem of the jurisdiction of the Mecosta county circuit court in the proceedings to amend. Its jurisdiction arises from the divorce proceedings in 1959. At that time, husband, wife, and children were all residents of and domiciled in Mecosta county, Michigan. Of the parties and the subject matter the court then had unquestioned, if not exclusive, jurisdiction.

Almost immediately thereafter the plaintiff father and children moved to Illinois and established residence and domicile in Illinois. Some time later defendant mother established residence and domicile in Texas. The briefs of the parties state the number 1 question involved in identical language. We set it out herewith:

"Did the circuit court have jurisdiction to modify a Michigan decree of divorce as to custody of minor children when such children and the plaintiff father to whom awarded had since decree become bona fide residents of and domiciled in the State of Illinois, and defendant mother at the time of her petitions for modification had since decree become a bona fide resident of the State of Texas?"

By statute and precedent the answer is "Yes." In determining the jurisdiction question we need not be plagued with problems of extraterritoriality or entitlement to full faith and credit. Whether the

order from which appeal is taken here is good outside of Michigan is not determinative of its validity in this State nor of the jurisdiction of the Michigan court which made it. The want of power to enforce and the want of jurisdiction are 2 different things. Inability of a court to enforce its decrees extraterritorially does not result in or require the conclusion of lack of jurisdiction. *Morrill* v. *Morrill,* 83 Conn 479 (77 A 1); *Hersey* v. *Hersey,* 271 Mass 545 (171 NE 815, 70 ALR 518).

There can be no question that, absent the factor, existent here, of domicile of the children outside this State, jurisdiction reposes in the Michigan court granting the decree of divorce and awarding custody of children of the parties to alter such decree concerning such custody. It is expressly so provided in CL 1948, § 552.17 (Stat Ann § 25.97). And see host of Michigan cases so holding, ranging from *Griffin* v. *Griffin* (1908), 154 Mich 536, to *Hensley* v. *Hensley* (1959), 357 Mich 3.

The children here being domiciled outside the State, however, what of *In re Volk,* 254 Mich 25? In that case an Ohio common pleas court granted the divorce to the parties, then resident there, and awarded custody of a child to the mother. After she had changed domicile of herself and child to Michigan a juvenile court of Ohio, in a neglected and dependent child proceeding, ultimately ordered custody awarded to the father. The record shows that no process was served on her in the juvenile court proceeding leading to that final order and she was not present in court there nor had she entered an appearance. The Ohio action in question was not that of the court granting the divorce, and came after the divorce. This Court, in review of a Michigan habeas corpus proceeding by the father, held by approving quote from 15 RCL, Judgments, § 417, p 940, that said order of the Ohio juvenile court

"has no extraterritorial effect beyond the boundaries of the State where it is rendered." This was with good reason, in view of the mentioned lack of service of process out of the Ohio juvenile court and failure of that court to acquire jurisdiction over the mother or child, then domiciled in Michigan. It is true that this Court, by way of indulging a bit of dicta, went on to say (p 32):

"When the minor became domiciled here, he became the ward of this State (*Kane* v. *Kane*, 241 Mich 96), and no longer subject to, or under the control of, the courts in Ohio."

There was no occasion for this Court to make such sweeping statement as to all of "the courts in Ohio", as if to include the common pleas court which granted the divorce, because its orders were not before the Michigan Court in the habeas corpus proceedings then before us on appeal. The citation of *Kane* v. *Kane*, 241 Mich 96, in the above quotation may be noted with interest. It is no authority for said dicta whatsoever. Actually, *Kane* does not hold that a child becomes "a ward of this State", but that "a child of divorced parents is a ward of the court", meaning the court granting the divorce. Quite contrary to the *Volk* dicta, in *Kane* this Court affirmed the decree of the Kent county, Michigan, circuit court, which not only granted divorce but awarded custody of the parties' children who were then and always had been domiciled in Canada.

In *Lewis* v. *Lewis*, 338 Mich 197, the wife was granted a divorce and awarded custody of the parties' child in the Genesee county, Michigan, circuit court. She then took the child with her to live in California. The husband thereafter sought modification, in the said Michigan court, of the decree to relieve him of child support payments on the ground that removal of the child from this State deprived

him of his decreed right of visitation. The court refused the relief sought by the father, but did amend the decree to entitle him to have the child 2 weeks every summer provided he was not in arrears on alimony and paid the child's traveling expenses to and from its mother's home. This Court affirmed the divorce court's action in this respect relating to a child domiciled in California.

In *Morrill* v. *Morrill, supra,* a divorce was granted in Connecticut, the court having jurisdiction over both parties and their children. Custody of the children was awarded to the mother with right of visitation to the father. She then moved to Germany, taking the children with her and there they became domiciled. The father then sought modification of the decree to award custody to him. The mother challenged the jurisdiction of the Connecticut court to modify the decree. On appeal from modification as sought, the supreme court of Connecticut said (pp 483, 484):

"The question of first importance upon this appeal is one relating to the court's jurisdiction to entertain the petition, raised primarily by the plea to the jurisdiction which was demurred to. It must be conceded that if the proceeding to which the petitioner has resorted were to be regarded as an original and independent one, the objections urged to the jurisdiction of the court to grant the relief prayed for, under the circumstances disclosed by the record, would be unanswerable. The answer which is made, and well made, is that the petition is in no sense an independent proceeding, but one which is incidental to the action of divorce, and that the court's jurisdiction to entertain it and grant its prayer is one which follows from the jurisdiction acquired in that action.

"There can be no question that the superior court in Fairfield county had full jurisdiction to render

its original judgment granting a divorce and awarding the custody of the 2 children of the severed marriage relation to the wife. The plaintiff wife was domiciled in Greenwich, the children had for 3 years had their home there with her, and the husband appeared and submitted himself fully to the jurisdiction to which he now appeals. It has been held that where jurisdiction to grant a divorce and award the custody of the infant children of the marriage once attaches, that jurisdiction is, in the absence of a statute upon the subject, a continuing one, so that the power of the court to amend, modify, or annul its order of custody, as the welfare of the children under existing conditions may demand, ever after remains. *Hoffman* v. *Hoffman,* 15 Ohio St 427; *Miner* v. *Miner,* 11 Ill 43; *Williams* v. *Williams,* 13 Ind 523. We however, have no occasion to appeal to such a general principle, since we have a statute upon the subject. It is not framed with that care and precision which ought to mark legislative action. It cannot, however, be doubted that the intention of those who enacted it was to confer upon courts which had jurisdiction of divorce proceedings, a continuing authority, as an incident of the cause, to annul or vary any order as to the custody, care, or education of the minor children of the parties which it might have previously made, and it must be so construed. General Statutes, § 4558*."

The statute referred to in *Morrill* is of like import to that of Michigan, above cited. The Connecticut court concluded by holding that removal of the children from the State by the parent to whom custody had been awarded did not oust the court granting the divorce of its continuing jurisdiction to modify the custodial provisions of its decree.

In *Hersey* v. *Hersey, supra,* the parties were divorced in Massachusetts and custody of their children awarded to the mother. She then took them to

---

* See Conn Gen Stat Ann 1958 § 46–23.—Reporter.

the State of Maine. It was held that domicile of the children in Maine did not deprive the Massachusetts court of jurisdiction to exercise its reserved and continuing power to change its determination as to custody. Similarly held in *Andrews* v. *Andrews,* 15 Iowa 423.

In *Conrad* v. *Conrad* (Mo App), 296 SW 196, it was held that the removal of a child from the State does not amount to taking him beyond the jurisdiction of the court in the sense that the court thereby loses jurisdiction to modify its decree as to custody.

In *Tinker* v. *Tinker,* 144 Okla 97 (290 P 185), it was held that the mother to whom custody of child was awarded in divorce decree could not, by removing to another State with the child, defeat the continuing jurisdiction of the court to modify its decree as to custody of the child. To same effect, see, also, *In re Livingston,* 108 Cal App 716 (292 P 285) ; *State, ex rel. Nipp,* v. *District Court,* 46 Mont 425 (128 P 590, Ann Cas 1916B, 256) ; and *Burns* v. *Shapely,* 16 Ala App 297 (77 So 447). It is true that these latter 3 cases and some others, in so holding, stress that the parent removed the children from the State in violation of the decree or a statute. This we do not deem controlling of the jurisdictional question.

As provided by the cited Michigan statute, recognized in the above Michigan cases and expressly stated in *Havens* v. *Havens-Anthony,* 335 Mich 445, there is a continuing authority and jurisdiction in the court granting a decree of divorce to alter its provisions as to child custody in like fashion as announced in *Morrill* for the Connecticut courts under the similar statute there in effect. That continuing jurisdiction cannot be terminated by action of 1 of the parties in taking the children, either with or without statutory or court permission, out of the State and causing them to become domiciled elsewhere.

To the extent that *Volk, supra,* may be misunderstood to hold that a Michigan court loses its jurisdiction to amend its decrees of divorce, including custodial rights of children domiciled other than in this State, it is overruled.

As to the question on the merits, no useful purpose would be served by long quotations from, or analysis of the testimony.

In this, as in all cases involving minors' custodial control, 2 principles of law are involved. One is the natural right of a parent or parents to the custody of their child or children. This is well recognized and well settled in this jurisdiction. It contemplates the parental right to the care, upbringing, and education of the child. But this right is not absolute. For children too have rights and when they are violated by the parents in the exercise of their custodial control, then the children become subject to judicial control as wards of the court. The overriding consideration then becomes the best interests of the children to which all other considerations must yield.

It is fundamental that appellee wife as the moving party bore the burden of proof to show such change in circumstances as would justify a change of custody on the basis of the welfare and best interest of the children. Sufficient to say, all the testimony of both divorced parties would create nothing more than an evidentiary standoff. Absent a clear preponderance of the evidence that the rights, best interests, and welfare of the involved children would be served by the custodial change sought, no change should be made. Such preponderance does not appear.

We are not disposed to decide custody herein on the basis of the conflicting and largely self-serving testimony of the divorced parents. Testimony which would impel any change for this reason is lacking

and for this reason the order modifying the decree is reversed. Costs to the appellant.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, SOURIS, and SMITH, JJ., concurred with O'HARA, J.

BLACK, J., concurred in result.