# STATE OF MICHIGAN

# COURT OF APPEALS

KELLY ZALEWSKI,

        Plaintiff-Appellant,

v

LENNIE GARRISON,

        Defendant-Appellee.

UNPUBLISHED
August 20, 2015

No. 324809
Monroe Circuit Court
LC No. 10-034446-DM

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Several years after the parties divorced, the plaintiff-mother, Kelly Zalewski, obtained new employment in Dearborn, approximately an hour's drive from her then-home in Monroe. Zalewski purchased a home in Allen Park, moved with the couple's two minor daughters, and planned to enroll the children in an Allen Park public school. The defendant-father, Lennie Garrison, lives in Temperance, which is within Monroe County. Garrison filed a motion to block Zalewski from changing the children's school. The circuit court granted his motion. Because it does not promote the best interests of the minor children to continue their education in a school 14 miles from the home of their father and 28 miles from the home of their mother, we reverse.

## I. BACKGROUND

The parties have two children, CG, who will enter the 7th grade in the upcoming school year, and IG, who will enter the 4th grade. When the couple separated in 2010, the children were enrolled in the Bedford Public Schools, which serve Temperance. Shortly thereafter, Zalewski settled in Monroe, where she rented a residence and enrolled the children at nearby Manor Elementary School. In September 2011, the parties reached a consent judgment of divorce. The parties shared joint legal and physical custody, but the judgment provided that Zalewski's "residence will be considered the primary residence for school purposes" with the caveat "so long as the residence is located within Monroe County or thirty miles outside of Monroe County."

When Zalewski moved to Monroe, she was working as an aide at an adult daycare center. The facility closed and Zalewski was unemployed for a period of time. Zalewski volunteered at the children's school during her unemployment and returned to school herself. In January 2014, Zalewski secured employment at the Oakwood Rehabilitation Center in Dearborn. That May,

she purchased a house in Allen Park. Her fiancé moved in with her and the two are now married.[1] Garrison has also since remarried.

On July 14, 2014, Garrison filed a motion "to change custody, parenting time and other relief." He sought to prevent Zalewski "from removing the minor children from Manor School" based on his concern after "observ[ing] the area" that Zalewski's new neighborhood was too unsafe for the children to walk to school. He also complained that the school was "low rated."[2] A Friend of the Court referee recommended denying Garrison's motion, and Garrison entered objections.

The circuit court conducted a de novo hearing and took testimony from both parents and the children's teachers. The teachers testified regarding the girls' academic strengths and weaknesses and indicated that they would do well in any environment. The teachers described Zalewski's frequent involvement at the school and both indicated that they had never met Garrison.

Zalewski testified that she began contemplating a move to the downriver area after she was laid off. Zalewski wanted to begin nursing classes at Wayne State University but her commute was too long. She testified that she discussed a possible move with Garrison. Garrison did not object to Zalewski moving, but expressed that he was not comfortable with the city of Taylor. Garrison also advised Zalewski to purchase a home rather than renting again. Zalewski continuously searched for employment in her field after she was laid off. She looked in the Monroe area, as well as Toledo and Ann Arbor, before locating work at the rehabilitation center in Dearborn. She then conducted internet research and talked to patients and colleagues when selecting a nearby city in which to purchase a home. Zalewski did not inform Garrison until after she had placed a bid on the house in Allen Park. She claimed that Garrison did not object to the move until that time.

Garrison asserted that approximately a year before she moved, Zalewski mentioned moving to a Taylor apartment owned by her landlord. Garrison expressed his concern at that time because he deemed Taylor an unsafe location with poor schools. He claimed ignorance of Zalewski's plan to relocate until she bought her house in Allen Park. Garrison also challenged Zalewski's decision to accept employment in Dearborn. He noted that his current wife had secured two local jobs in the past year with a $10 hourly wage, one in retail and the other in fast food. Garrison believed that Zalewski was motivated to move to Wayne County to be closer to her boyfriend, now husband.

---

[1] Zalewski is now Kelly Shahrouri; however, her name has not been changed on the register of actions.

[2] Neither party presented any evidence about the quality and ranking of either school. Manor Elementary School in Monroe ranks in the 31st percentile, while Arno Elementary, which is closest to Zalewski's home, ranks in the 47th. See Michigan Department of Education, Top-to-Bottom Rankings, <http://www.michigan.gov/documents/mde/2013-14_TTB_Rankings_465183_7.pdf?20150724153150> (accessed July 24, 2015).

In relation to the choice of schools, Zalewski testified that she had always been very involved at school, volunteering in the classroom and attending special events. She was the parent that left work when a child took ill during the day. Accordingly, she desired the children to attend a school near her home and work. Garrison admitted that he played no role at the children's school, even finding it "unusual" that a parent might volunteer in the classroom.[3] Garrison never attended a class party or a field trip despite that he worked nights, was home every weekday, and awoke by noon or 1 p.m. He also never arranged to participate in a parent-teacher conference or communicated with the children's teachers.

The parties also testified about their work schedules. Zalewski works 40 hours each week from 8:00 a.m. through 4:30 p.m. However, she does not work the same days each week. She works two weekends in a row and has every third weekend off. When she works the weekends, Zalewski has two days off during the week. Garrison works from 5:30 p.m. to 4:45 a.m. on Tuesdays through Fridays. Based on Garrison's work schedule, he had parenting time for the first three weekends of every month, starting Saturday at 1 p.m. through Tuesday morning. On those weeks, Garrison was responsible for taking the children to school on Monday and Tuesday mornings and picking them up on Monday. On the off week, Garrison enjoyed after-school parenting time on Monday evenings.

At the conclusion of the hearing, the circuit court determined that the children had an established custodial environment with both parents. The court further found that neither party had shown a sufficient change in circumstances or proper cause to alter the parties' joint custody. The court determined that Zalewski's proposal to change the children's school district would "not significantly modify the established custodial environment" and required Zalewski to prove by a preponderance of the evidence that the change would be in the children's best interests. The court elaborated, "[T]he Court's focus is not what's convenient for Mom; not what's convenient for Dad, but what's in the best interests of the children."

The court then addressed the best interest factors of MCL 722.23. The court found the parties equal in relation to factor a, "the love, affection and other emotional ties existing between the parties involved in the children," and factor c, "the capacity and disposition of the parties to provide the children with food, clothing, medical care and other remedial care." The court found irrelevant to the discussion factor e, the permanence of the family unit, factor f, the moral fitness

---

[3] In fact, according to the Michigan Department of Education, "the most accurate predictor of a student's achievement in school is not income or social status, but the extent to which that student's family is able to" participate in the educational process, including by "[b]ecom[ing] involved in their children's education at school and in the community." See Collaborating for Success-Parent Engagement Toolkit, available at <http://www.michigan.gov/mde/0,4615,7-140-5233---,00.html> (accessed July 24, 2015). One strategy encouraged by the department is to "[p]rovide parents with opportunities to help in the classroom. They can help children with academic tasks, including reading[.]" Parent Engagement Toolkit, p 77, <http://www.michigan.gov/documents/mde/4a._Final_Toolkit_without_bookmarks_370151_7.pdf> (accessed July 24, 2015).

of the parties, factor g, the mental and physical health of the parents, and factor k, domestic violence.

The court found the parties equal in relation to factor b, the capacity to give "the children love, affection, guidance and continue their education," noting that both parents could get the children to school on time. The court discounted Zalewski's "past involvement with attending their school, field trips; things of that nature" because Zalewski was unemployed at that time and would be unable to continue that involvement given her new employment. Although Garrison's participation was less intense, he was "very well aware of the children's academic strengths and weaknesses."

Under factor d, the court considered "the time the children have lived in a stable satisfactory environment, the desirability to maintain continuity." The court noted that this continuity "is not only based upon their residence and their home, but also their continuity in school." Maintaining the continuity in school would be in the children's best interests, the court determined. IG would benefit from the "looping" policy at Manor Elementary because she would continue with the same teacher in the following school year.

The court determined that factor h, the home, school, and community record of the children, also weighed against granting the change in school districts. The court reasoned that the children's academic performance "would be best served by maintaining continuity at Manor School."

The court indicated that it spoke to the children and considered their preferences, finding factor i "very relevant."

The court weighed factor j, "the willingness and ability to facilitate and encourage" the child's relationship with the other parent, against Zalewski and her desire to change the children's school district. The court discredited Zalewski's testimony that she discussed the move with Garrison, asserting:

Mother very well could have addressed the issue before she moved to Allen Park; had more discussion with the parties or even brought it to the attention of the Court before she bought a house in Allen Park. This was all done after the fact that when the father was concerned, objected to the change of school district.

Under the catch-all of factor l, the court elaborated upon its determination that permitting Zalewski's proposed change would not promote the best interests of the children:

The Court questions the plaintiff mother's motivation to move to Allen Park. Okay. No question it's more convenient for her boyfriend. It's in the best interest of the children in terms of maintaining continuity in the school that's questionable. Further, the Court is of the opinion that the proposed change may impair the ability of the defendant father to be accessible to his children as he should at this age of the children.

The circuit court accordingly granted Garrison's motion to prevent Zalewski from changing the children's school and "order[ed] that [the] children remain in Manor School." The

-4-

court acknowledged that this would impose a hardship on Zalewski and recommended that she purchase a home in Monroe.

Although Zalewski had earlier indicated that she would move back to Monroe if the circuit court prevented the change in schools, she realized that this was economically impossible. Following the court's decision, she and Garrison reached a consent order, altering the parenting time schedule to facilitate the parties' work schedules and the children's new commute from their mother's Allen Park home. Zalewski agreed to pick the children up from school on Thursday afternoons, transport them to and from school on Fridays, and enjoy a full weekend of parenting time before returning them to school on Monday morning. Garrison enjoyed parenting time from Monday after school through Thursday before school. Accordingly, while Zalewski was required to endure a longer commute to the children's school three days each week, she continued to have more overnights with the children. She filed an application for leave to appeal, which this Court granted.

## II. LEGAL PRINCIPLES

Despite the labels placed by the parties on their challenges below and in this Court, this case involves a dispute between the joint legal custodians of two minor children regarding a major decision affecting the children's education.[4] The Child Custody Act (CCA), MCL 722.21 *et seq.,* governs all disputes involving the custody of a child. *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (*Pierron II*). Under the CCA, we are required to affirm a lower court's judgments and orders " 'unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Id.*, quoting MCL 722.28. A factual finding is against the great weight of the evidence if the record "clearly preponderates in the opposite direction." *Pierron II*, 486 Mich at 85 (quotation marks, citation, and alteration omitted).

> The [CCA] "applies to all circuit court child custody disputes and actions, whether original or incidental to other actions." MCL 722.26(1). The act provides that when parents share joint legal custody—as the parties do here—"the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). However, when the parents cannot agree on an important decision, such as a change of the child's school, the court is responsible for resolving the issue in the best interests of the child. *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993). [*Pierron II*, 486 Mich at 85.]

---

[4] Contrary to Zalewski's contention, the circuit court's order preventing her from changing the children's school did not effectuate a "de facto change in custody." The parties still share joint legal and physical custody. Zalewski continues to exercise significantly more parenting time than Garrison. Although Garrison's motion requested a custody change, that request was denied and the court was not required to find proper cause or a change in circumstances before addressing an educational dispute between legal custodians.

In *Lombardo*, 202 Mich App at 157-158, this Court described the judicial process of resolving disputes regarding "important decisions affecting the welfare of the child" between the child's joint custodians, and the Supreme Court clarified the judiciary's role in *Pierron II*. Before the court considers the substance of the dispute, it must determine "whether the proposed change would modify the established custodial environment" of the children. *Pierron II*, 486 Mich at 85. If it would, clear and convincing evidence must support that the change is in the children's best interests. *Id.* at 86. If not, the children's best interests need only be established by a preponderance of the evidence. *Id.* at 89-90.

The court must then resolve the underlying dispute. As stated in *Lombardo*:

[J]oint custody in this state by definition means that the parents share the decision-making authority with respect to the important decisions affecting the welfare of the child, and where the parents as joint custodians cannot agree on important matters such as education, it is the court's duty to determine the issue in the best interests of the child. [*Lombardo*, 202 Mich App at 159.][5]

"The controlling consideration" must be "the best interests of the children." *Id.* at 159-160; see also *Pierron II*, 486 Mich at 91. In this regard,

The court should not relinquish its authority to determine the best interests of the child to the primary physical custodian. Accordingly, we conclude that a trial court must determine the best interests of the child in resolving disputes concerning "important decisions affecting the welfare of the child" that arise between joint custodial parents. [*Lombardo*, 202 Mich App at 160.]

In determining the best interests of the child, the court "must consider, evaluate, and determine each of the" best interest factors of MCL 722.23. *Id.* In *Pierron II*, 486 Mich at 91, quoting *Parent v Parent*, 282 Mich App 152, 157; 762 NW2d 553 (2009), the Supreme Court clarified that the trial court must " 'make explicit factual findings with regard to the *applicability* of each factor' " when the decision will not affect the children's established custodial environment. (Emphasis in original.) If a factor is relevant to the decision, the court must "make substantive factual findings" on the record; if not, the court need not reach the substance of that matter. *Pierron II*, 486 Mich at 91.

---

[5] Zalewski's contention that the divorce judgment gave her carte blanche to move anywhere within 30 miles of Monroe County and unilaterally change the children's school is not legally supportable. This suggestion is contrary to the definition of joint legal custody. See MCL 722.26a(7)(b) ("joint custody" means "[t]hat the parents shall share decision-making authority as to the important decisions affecting the welfare of the child"). And the circuit court's interference in the dispute upon Garrison's motion did not modify this provision of the divorce judgment. Quite simply, regardless of what the parties agree to in a divorce judgment, the judiciary may not abandon its duty to consider the best interests of the children. See *Harvey v Harvey*, 470 Mich 186, 192-193; 680 NW2d 835 (2004).

III. ANALYSIS

A. BURDEN OF PROOF

The case before us is very similar to *Pierron*. In *Pierron*, the divorced parents both lived in Grosse Pointe Woods and the mother had custody of the children during the school week. *Pierron II*, 486 Mich at 84. The mother moved to Howell, approximately 60 miles from the father's home. The father objected when the mother attempted to enroll the children in Howell public schools. *Id.* The circuit court in *Pierron* "found that the proposed change of schools would modify the established custodial environment," which existed with both parents, "because the 60-mile distance between the proposed schools and [the father's] home" would prevent him from providing guidance and assistance in the children's education. *Id.* at 86. However, the Supreme Court agreed with this Court's assessment that no change was effected on the established custodial environment "because the distance of the new schools from [the father's] home would only require relatively minor adjustments to [the father's] parenting time." *Id.* at 87.

Just as in *Pierron*, Zalewski's decision to move approximately 45 miles from Garrison's home did not alter the children's established custodial environment with both parents. The distance between the parents' homes and between Garrison's home and the Allen Park school "would only require relatively minor adjustments" in the parenting time schedule. Indeed, Garrison begins work in Dearborn, very near Zalewski's home, at 5:30 p.m. four days a week. The timing and location of Garrison's work would make it convenient for Garrison to attend after school activities or take his daughters to dinner before his shift began, should the children attend school in Allen Park. And Garrison's weekend parenting time schedule could remain largely intact, complimenting Zalewski's schedule which requires her to work two weekends out of three.

Also as in *Pierron*, the mother's home is considered the primary residence for purposes of school enrollment. In *Pierron*, the mother had primary physical custody, *Pierron v Pierron*, 282 Mich App 222, 226; 765 NW2d 345 (2009) (*Pierron I*), while the divorce decree in this case provides that the mother's home controls for school enrollment, so long as she lives within 30 miles of Monroe County. In *Pierron I*, 282 Mich App at 245, this Court noted that the mother was free to move the children to Howell without the consent of the father or the court. This is because MCL 722.31(1) permits a custodial parent to "change a legal residence of the child to a location" that is less than "100 miles away from the child's legal residence" when the action commenced. While the parent may move the child's residence, the circuit court is not relieved "of its obligation to resolve disputes regarding important decisions affecting the welfare of the child," including which school the child will attend. *Pierron I*, 282 Mich App at 246.

Ultimately, as the change in schools would not alter the children's established custodial environment, the court correctly employed the preponderance of the evidence burden of proof. The question of who bears that burden is not straightforward. As a general rule, the party filing a motion bears the burden of proving entitlement to the relief requested. See *Hentz v Hentz*, 371 Mich 335, 343; 123 NW2d 757 (1963) ("It is fundamental that appellee wife as the moving party bore the burden of proof to show such change in circumstances as would justify a change of custody on the basis of the welfare and best interest of the children."); *Ewald v Ewald*, 292 Mich

App 706, 725 (the party seeking attorney fees in a divorce action bears the burden of proving entitlement to the award). In certain family law situations, the rule has been varied. Where one party seeks to move with a child and change the child's school, courts have placed the burden on that party to prove that the change is in the child's best interests. The burden is placed on the parent seeking to effectuate a change even when he or she has filed no motion in court, and even when court permission was not required initially. In situations where the other parent files a motion to block the change, courts have not placed the burden on the moving party, but on the party opposing the motion to block the change. See *Pierron I*, 282 Mich App at 247-248 (the proponent of the change, which was not the moving party, has the burden of proving it is in the child's best interests); *Powery v Wells*, 278 Mich App 526, 529; 752 NW2d 47 (2008) ("Because plaintiff made the move to Traverse City, which necessitated the attendant modification of parenting time, she had the burden of establishing that the existing custody arrangement should be disrupted."); *Brown v Loveman*, 260 Mich App 576, 598; 680 NW2d 432 (2004) (placing the burden on the defendant-mother to prove that a change in the child's established custodial environment was in the child's best interests where the plaintiff-father sought to prevent the child's relocation).

Accordingly, although Zalewski was within her rights to move to Allen Park, and even though Garrison filed the motion to block the change in school enrollment, Zalewski bore the burden of proving by a preponderance of the evidence that the change in schools would be in the children's best interests.

## B. BEST INTEREST FACTORS

Once the circuit court determined that the proposed change in schools would not alter the children's established custodial environment and declared that Zalewski had to prove by a preponderance of the evidence that the change was in the children's best interests, the court determined which best-interest factors under MCL 722.23 of the CCA were relevant to the dispute. We do not agree that every factor cited by the circuit court is relevant to the resolution of this issue. Nor do we agree that the evidence preponderated in favor of maintaining enrollment at Manor Elementary School in Monroe.

The circuit court first analyzed MCL 722.23(a) and found the parties equal in this regard. Factor a takes into account "[t]he love, affection, and other emotional ties existing between the parties involved and the child." We fail to see how the emotional relationship between parent and child bears any relevance on what school the children should attend. The choice of school will not alter the children's established custodial environment with either parent and therefore should have no impact on the strong parent-child relationships present in this case.

The court found the parties equal in relation to factor c, as well, although it failed to make any meaningful factual analysis on the record. MCL 722.23(c) provides for consideration of "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." The only testimony rendering this factor relevant pertained to the parents' ability to pick the children up from school if they became ill during the day. Zalewski testified that Garrison had never retrieved the children from school when they were sick. After she took employment in Dearborn, IG became ill and the school attempted to

contact Garrison and his wife, but neither answered. As a result, Zalewski had to leave her job and drive nearly an hour to retrieve IG. Garrison admitted that he had never picked the children up from school when they were sick, but claimed he had driven to Zalewski's Allen Park home to take the children when they were ill so Zalewski could go to work. While Garrison testified that he would make himself available during the day for such purposes, his course of conduct has demonstrated to the contrary. Accordingly, the undisputed evidence clearly preponderates in favor of Zalewski's request to enroll the children in a school close to her home and work.

The court then veered out of order and found the parties equal in relation to MCL 722.23(b), which considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." The court's decision was based on the facts that both parents were able to bring the children to school on time and they both were aware of the children's academic strengths and weaknesses. The court erred in discounting Zalewski's involvement at the children's school when considering this factor. This Court has approved consideration of a parent's involvement in the children's school life in analyzing the best-interest factors. See *Diez v Davey*, 307 Mich App 394; 861 NW2d 323 (2014). Zalewski had assisted in IG's classroom on a regular basis, and volunteered for special events and field trips. Although her employment required Zalewski to reduce the hours she spent at the school, she never testified that she would stop volunteering as found by the court. Rather, Zalewski testified that she had days off during the school week for the first two weeks of every three-week period. Zalewski stated her intent to continue to be active at school and try to adjust her work schedule to allow her continued participation. However, if she had to drive one hour each way to volunteer, her opportunities would be limited. Given the circuit court's misrepresentation of Zalewski's testimony and the relevance of a parent's participation in a child's school life, the court's weighing of this factor is also not supported by a preponderance of the evidence.

The court then determined that factor d weighed in favor of maintaining continuity through enrollment at Manor Elementary. MCL 722.23(d) takes into account "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." The court determined that it was in the children's best interests to maintain continuity at their current school, especially in light of the fact that IG would have the same teacher in the following year. However, the court seemed to select continuity for continuity's sake, without consideration of the side effects. The circuit court's order is bizarre considering that *neither* parent lives in Monroe. As noted in *Pierron I*, 282 Mich App at 261, "it is certainly in the children's best interests to attend school in the community where they live with their primary physical custodian." The children's father lives in Temperance and their mother lives in Allen Park. Their parents' distance from the Monroe school in which the circuit court ordered their continued attendance likely impairs both parents' abilities to attend after-school activities and certainly prevents the children from forging friendships with classmates outside of school hours. The children also a face a long commute of one hour each way on the days they reside with their mother, which is the greater part of the school week. The commute will limit the children's time to do homework, engage in extracurricular activities, and to play or relax. The court took no consideration of these various factors which certainly preponderate against maintaining continuity in a school distant from both parents' homes.

As noted, in relation to factor h, "[t]he home, school, and community record of the child," the court found that the children's academic performance "would be best served by maintaining continuity" at their Monroe elementary school. This contradicts the testimony of the children's teachers, and Garrison himself. IG's teacher testified, "I think she'll thrive in any school that she went to. I mean because she's just that great of a student." CG's teacher's testimony was more hedged. She stated that CG could thrive academically if she changed schools but "[a]s far as socially, . . . I can't say that." Garrison asserted, however, that CG had been bullied at Manor School, suggesting that a change would be in her best interests. There simply is no evidence that continuing enrollment at the distant school is necessary to support the best interests of the children.

The court indicated that it took into account the children's stated preferences under factor i. Although the court did not reveal the children's confidences, it implied that the children preferred to remain in the Monroe public schools by indicating that their preferences were "very relevant."[6] There is no way for this Court to ascertain whether the children's preferences remain the same after a school year filled with long commutes and likely without meaningful interaction with classmates outside of school. However, at the time the circuit court analyzed the best interest factors, there is no reason to believe that its assessment in this regard preponderated against the evidence.

The circuit court found relevant factor j, "The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." In assessing this factor, the court weighed the credibility of the parties and credited Garrison's story that Zalewski did not discuss changing the girls' school district until after she placed a bid on a home in Allen Park. We may not substitute our judgment for that of the circuit court in making such credibility assessments. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). After the circuit court's order, however, the parties cooperated and reached a consent judgment altering the parenting time schedule.

Even were we to conclude that the evidence preponderated in Garrison's favor in relation to the previous factors, the circuit court's analysis under MCL 722.23(*l*) would demand relief. Under factor *l*, the circuit court took the opportunity to consider "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." The court expressed concern about Garrison's ability to be accessible to his children if their school was relocated to such a distance. Of concern to this Court, the circuit court also decided that Zalewski was motivated to move to Allen Park, not out of consideration for the best interests of the children, but out of convenience for her boyfriend. By focusing on Zalewski's motives, the court interjected a

---

[6] Contrary to Zalewski's challenge on appeal, the circuit court was not required to violate the children's confidences by explicitly placing their preferences on the record. See *Fletcher v Fletcher*, 200 Mich App 505, 518; 504 NW2d 684 (1993), overruled in part on other grounds 447 Mich 871; 526 NW2d 889 (1994); *Wilson v Gauck*, 167 Mich App 90, 97; 421 NW2d 582 (1988).

wholly impermissible factor into the mix. This alone is reason enough to overturn the circuit court's decision.

Parents often decide to move for reasons not solely centered on the educational needs of their children. Unemployed parents find jobs in distant locations, single parents meet potential spouses in other cities. That Zalewski was motivated by economics and romance to relocate to a city near Dearborn does not mean that the move cannot ultimately be in the children's best interests. Moreover, there is no evidence that continuing the children in a school district closer to their father will make him more accessible to them. Garrison admitted that he was not involved in the children's school, although Zalewski was. Garrison never picked the children up when needed during the day, Zalewski did. Accordingly, the evidence "clearly preponderates in the opposite direction," *Pierron II*, 486 Mich at 85 (quotation marks, citation and alteration omitted), and the court should have weighed this factor heavily in Zalewski's favor.

We reverse the circuit court's order preventing Zalewski from enrolling the children in Allen Park public schools. The children may be enrolled in the Allen Park Public School District forthwith. We do not retain jurisdiction.


/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens